# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

SEAN CHRISTOPHER CLEMMONS,          )
                                    )
       Plaintiff,                  )
                                    )
v.                                  )   Case No.: 14-cv-00885-RDP-SGC
                                    )
UNITED STATES OF AMERICA,           )
et al.,                             )
                                    )
       Defendants.                 )

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Sean Christopher Clemmons, has filed a *pro se* amended complaint pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"), alleging that rights, privileges, or immunities afforded him under the Constitution and Alabama law were abridged during his incarceration at FCI Talladega.[1]  (Doc. 40). The plaintiff is currently incarcerated at FCI Gilmer in Glenville, West Virginia.  The plaintiff names as defendants the United States of America, Warden John Rathman, Assistant Warden Becky Clay, Captain Davis, Lieutenant Davis, Lieutenant Orr, Lieutenant Bounds, Officer Allor, Officer Nelson, Officer Stuart, Frankie Daughtery, Dr. Holbrook, Dr. Burrell, Nurse Hardy, Nurse Jane Doe, John Doe Medical Services, and Mid-Level Practitioners Joel Hernani, Sofronio Paco, Honorio Dela Cruz, and Laureano Marasigan.  The plaintiff seeks monetary and injunctive relief. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was

---

[1] The plaintiff also alleged in his original complaint that various medical and prison staff at FCI Schuylkill in Minersville, Pennsylvania, were negligent and deliberately indifferent to his medical needs.  (Doc. 1).  On March 12, 2015, the district judge severed the plaintiff's claims against the FCI Schuylkill defendants and transferred those claims to the United States District Court for the Middle District of Pennsylvania.  (Doc. 30).  The plaintiff's claims against the United States and the FCI Talladega defendants based on events that occurred in the Northern District of Alabama remain pending in this district and will be addressed herein.  (*Id.*).

referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I. Standard of Review

The Prison Litigation Reform Act of 1995, as partially codified at 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against officers or employees of governmental entities and to dismiss the complaint or any portion of the complaint that it finds frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. Where practicable, the court may *sua sponte* dismiss a prisoner's complaint prior to service. *See* 28 U.S.C. § 1915A(a).

A dismissal pursuant to § 1915A (b)(1) for failure to state a claim is governed by the same standards as dismissals for failure to state a claim under FED. R. CIV. P. 12(b)(6). *See Jones v. Bock*, 549 U.S. 199, 215 (2007). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nonetheless, because "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys[,]" they are liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

## II. Factual Allegations[2]

---

[2] After the plaintiff filed two amended complaints and affidavits in which he alleged additional factual allegations and claims, the undersigned directed the plaintiff to file a final amended complaint to avoid a piecemeal review of his claims. (Doc. 37). The undersigned informed the plaintiff that his final amended complaint must include all of the plaintiff's claims in this action and should not refer back to the original complaint. (*Id*. at 2). The undersigned also advised the plaintiff that the court would consider only the claims set forth in the final amended complaint. (*Id.*).

On January 14, 2012, the plaintiff was having a bowel movement when his "hemorrhoids protruded down . . . inflamed [and] bleeding." (Doc. 40 at 1). The plaintiff was in severe pain. (*Id.*). The plaintiff attempted to "insert the hemorrhoids back up into [his] rectum," but was unable to do so. (*Id.*).

The plaintiff called Officer Kimbrough for assistance. (Doc. 40 at 1). Officer Kimbrough came to the plaintiff's cell and stated that he would inform the Mid-Level Practitioner ("MLP") on duty of the plaintiff's medical condition. (*Id.*). After thirty minutes passed, Officer Kimbrough returned to the plaintiff's cell and informed him that the MLP stated the plaintiff could not be seen since it was the Martin Luther King, Jr. holiday weekend but the plaintiff would be examined once regular operations resumed on the compound the following Tuesday. (*Id.*). Officer Kimbrough further informed the plaintiff that he had also spoken with Lieutenant Orr and she stated that she would abide by the MLP's decision. (Doc. 40 at 3).

On January 17, 2012, MLP Joel Hernani arrived at the plaintiff's cell door around 3:45 p.m. (Doc. 40 at 1). Hernani conducted a visual examination of the plaintiff's rectum area through the food tray slot of the cell door. (*Id.*). The plaintiff complained that he had been in the segregation unit for three days without any medical treatment and that he was in severe pain and still bleeding. (*Id.*). Hernani gave the plaintiff a small package of cream and told him he would also receive hemorrhoid medication the following day. (Doc. 40 at 2; Doc. 9 at 6). The plaintiff informed Hernani that he needed a sitz bath for his hemorrhoids, but Hernani denied him the treatment. (*Id.* at 2). Officer Stuart closed the plaintiff's food tray slot and Stuart and Hernani left. (*Id.*). On January 18, 2012, the pharmacist came to the plaintiff's cell door and gave him "generic [hemorrhoid]" suppositories. (Doc. 9 at 6).

On January 23, 2012, Officer John Doe escorted the plaintiff to see Dr. Holbrook about his hemorrhoids. (Doc. 40 at 2). Dr. Holbrook refused to examine or treat the plaintiff. (*Id.*). On

3

January 24, 2012, the plaintiff submitted an inmate request form to Dr. Holbrook concerning his medical condition. (Doc. 40 at 2, 5-6). The plaintiff stated that his hemorrhoids were protruding and painful. (*Id*. at 5-6). He also stated that he had to wear a towel because he was bleeding. (*Id*.). Dr. Holbrook did not respond to the plaintiff's request for medical care. (Doc. 40 at 2). On January 26, 2012, the plaintiff experienced pain due to a cavity in his upper right tooth. (Doc. 40 at 2). The plaintiff submitted an inmate request form to Dr. Burrell concerning his tooth pain, but Dr. Burrell failed to treat him. (Doc. 40 at 2, 7).

On January 30, 2012, the plaintiff sent inmate request forms to Warden Rathman and Lieutenant Davis concerning his hemorrhoids. (Doc. 40 at 2, 8-11). The plaintiff acknowledged that medical staff had prescribed him suppositories to treat his hemorrhoids and the medication helped "somewhat by slowing the bleeding and ease[d] the pain," but stated that his hemorrhoids were not shrinking. (Doc. 40 at 8). Neither Rathman nor Davis responded to the plaintiff. (Doc. 40 at 2).

On February 2, 2012, the plaintiff submitted an inmate request form to prison physician assistants and requested to be examined. (Doc. 40 at 2, 12). The plaintiff stated that he was experiencing bleeding, pain, and discomfort due to his hemorrhoids. (*Id*. at 12). The plaintiff noted that he had to wear a towel because he was bleeding and because of the suppositories. (*Id*.). The plaintiff also recommended that his hemorrhoids be surgically removed. (*Id*.).

On February 9, 2012, the plaintiff submitted another inmate request form to prison physician assistants in which he requested more hemorrhoid suppositories and complained that his hemorrhoids were still painful. (Doc. 40 at 13). At some point in February 2012, the plaintiff's hemorrhoids shrank so that he was "finally able to push them back up into [his] rectum." (Doc. 9 at 3 ).

Sometime between February 2 and 16, 2012, the plaintiff spoke with Captain Davis at his cell door concerning his hemorrhoids and asked Davis to speak with someone about obtaining adequate medical treatment for the plaintiff. (Doc. 40 at 3). However, Captain Davis never sought treatment for the plaintiff. (*Id*.). Also during the relevant time period, the plaintiff informed Lieutenant Bounds of his hemorrhoid pain and bleeding and requested medical treatment. (Doc. 40 at 3). Lieutenant Bounds told the plaintiff that his medical condition was a problem for medical staff. (*Id*.).

From January 14 to February 16, 2012, the plaintiff made numerous verbal complaints to MLPs Hernani, Paco, Dela Cruz, and Marasigan, as well as Nurse Hardy and Nurse Jane Doe concerning his hemorrhoids and that he was experiencing severe pain and bleeding. (Doc. 40 at 3). The plaintiff requested a sitz bath but medical staff would deny his requests for such treatment. (*Id*.). The plaintiff also made numerous complaints and requests for treatment to Officers Allor, Nelson, and Stuart and requested that they inform medical staff and supervisory prison officials about his condition. (Doc. 40 at 3). The plaintiff alleges these officers failed to assist him in receiving proper medical treatment. (*Id*.).

The plaintiff complained to Frankie Daughtery about his medical condition, but Daughtery did not seek treatment for the plaintiff. (*Id*.). The plaintiff also spoke with Assistant Warden Becky Clay about his medical condition. (*Id*. at 3). Clay did not seek treatment for the plaintiff concerning his hemorrhoids. (*Id*.).

The plaintiff claims that prison medical staff failed to give him an adequate diagnosis to determine the severity of his hemorrhoid condition. (Doc. 40 at 4). He states that the suppositories he was prescribed were ineffective. (*Id*.). The plaintiff claims, "All these named defendants allowed me to languish in pain, discomfort, because of my hemorrhoids protruding from my rectum anus area and bleeding for numerous days and they all denied my pleas for

adequate medical treatment." (*Id*.). The plaintiff also contends that prison officials delayed necessary corrective eye surgery for years which has impaired his vision. (Doc. 40 at 4).

### III. Analysis

#### A. Eighth Amendment Medical Claims under *Bivens*

The plaintiff alleges that the defendants were deliberately indifferent to his serious medical and dental needs during his incarceration at FCI Talladega. The United States Supreme Court has held it is only deliberate indifference to serious medical needs which is actionable under 42 U.S.C. § 1983.[3] *See Estelle v. Gamble*, 429 U.S. 97 (1976). Indeed, the conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. *See Bass v. Sullivan*, 550 F.2d 229 (5th Cir. 1977). Mere negligence is insufficient to support a constitutional claim. *See Fielder v. Brossard*, 590 F.2d 105 (5th Cir. 1979). Moreover, an accidental or inadvertent failure to provide medical care, or negligent diagnosis or treatment of a medical condition, does not constitute a wrong under the Eighth Amendment. *See Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980). Additionally, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. at 106. Neither will a mere difference of opinion between an inmate and the institution's medical staff as to treatment and diagnosis alone give rise to a cause of action under the Eighth Amendment. *See Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976); *see also Estelle v. Gamble*, 429 U.S. 97, 106-08 (1976).

Deliberate indifference can be shown in a variety of ways. As the Eleventh Circuit Court of Appeals noted:

---

[3] A 42 U.S.C. § 1983 suit challenges the constitutionality of the actions of state officials; a *Bivens* suit challenges the constitutionality of the actions of federal officials. Because claims under 42 U.S.C. § 1983 and *Bivens* are similar, courts generally apply § 1983 law to *Bivens* cases. *See Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995).

> Our cases have consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference. Medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" constitutes deliberate indifference. Additionally, when the need for medical treatment is obvious, medical care that is so cursory as to amount to no treatment at all may constitute deliberate indifference.

*Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995) (internal citations omitted).

An official also acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening or urgent medical condition that would be exacerbated by delay. *See Hill v. DeKalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1186-87 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002); *see also Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir. 1994). Delay in access to medical treatment can violate the Eighth Amendment when it is "tantamount to 'unnecessary and wanton infliction of pain.'" *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal citations omitted).

"In contrast, delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation." *Hill v. DeKalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1186-87 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002). A medical need is considered serious when a delay in treatment results in an inmate suffering "a lifelong handicap or permanent loss." *Monmouth County Corr. Inst. Inmates v. Lorenzo*, 834 F.2d 326, 347 (3rd Cir. 1987). An inmate claiming an unconstitutional delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Hill*, 40 F.3d at 1188, *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).

1. <u>Plaintiff's Hemorrhoid Condition</u>

The plaintiff claims that medical staff at FCI Talladega failed to provide him proper medical treatment for his hemorrhoids. He further claims he requested assistance from various members of the prison staff in obtaining medical treatment, but they failed to help him.

### a. Medical defendants Holbrook, Hernani, Paco, Dela Cruz, Marasigan, Hardy, Nurse Jane Doe, & John Doe Medical Services

Even assuming the plaintiff's hemorrhoid condition constituted a serious medical need, his deliberate indifference claims regarding this condition fails. As explained below, the plaintiff has not sufficiently alleged that the medical defendants were deliberately indifferent to his hemorrhoid condition.

The plaintiff began having trouble with his hemorrhoids on January 14, 2012. (Doc. 40 at 1). Medical staff did not immediately examine the plaintiff because it was a holiday weekend.[4] (*Id.*). The plaintiff acknowledges in his complaint that on January 17, 2012, defendant Hernani came to the plaintiff's cell and conducted a visual examination of the plaintiff's hemorrhoids through the cell door. (*Id.*). Defendant Hernani then gave the plaintiff a small container of cream for his hemorrhoids, and a pharmacist provided the plaintiff with suppositories the next day. (Doc. 40 at 2, 4; Doc. 9 at 6, Clemmons Aff. ¶ 20).

By the plaintiff's own admission, he was not denied treatment for his hemorrhoids while incarcerated at FCI Talladega. Rather, the plaintiff is merely upset because medical staff did not also provide him with other forms of treatment such as a sitz bath, which he claims would have caused the hemorrhoids to shrink faster, or recommend surgery. The fact that the plaintiff disagrees with the efficacy of the treatment recommended or simply prefers a different course of

---

[4] The plaintiff alleges Officer Kimbrough notified the MLP on duty of the plaintiff's hemorrhoid condition. (Doc. 40 at 1). However, the MLP stated that the plaintiff could not be seen because it was a holiday weekend and medical staff would examine him when regular operations resumed the following Tuesday. (*Id.*). The plaintiff does not allege which MLP failed to treat him on this date.

treatment does not state a constitutional claim. "[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis and course of treatment [does not] support a claim of cruel and unusual punishment." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

Neither is there evidence that the treatment medical staff provided the plaintiff was "so grossly incompetent, inadequate, or excessive as to shock the conscience." *Adams v. Poag*, 61 F.3d 1537, 1544, 1545 (11th Cir. 1995) (whether governmental actors "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment") (quoting *Estelle*, 429 U.S. at 107). Indeed, the plaintiff acknowledges in his amended complaint that the prescribed suppositories slowed his bleeding and eased his pain. (Doc. 40 at 8, 13). Additionally, the plaintiff states in an affidavit that his hemorrhoids did shrink at some point in February 2012. (Doc. 9 at 3).

Based on the foregoing, the plaintiff's Eighth Amendment medical claims against defendants Holbrook, Hernani, Paco, Dela Cruz, Marasigan, Hardy, Nurse Jane Doe, and John Doe Medical Services concerning his hemorrhoid condition are due to be dismissed for failing to state a claim upon which relief may be granted.

### b. Non-medical defendants Rathman, Clay, Captain Davis, Lieutenant Davis, Orr, Bounds, Allor, Nelson, Stuart, and Daughtery

The plaintiff alleges prison staff was also deliberately indifferent to his medical condition. Specifically, he claims he notified Defendants Rathman, Clay, Captain Davis, Lieutenant Davis, Orr, Bounds, Allor, Nelson, Stuart, and Daughtery of his need for medical treatment for his hemorrhoids, but they failed to assist him. (Doc. 40 at 2-3). Even if the plaintiff had stated a cognizable Eighth Amendment claim against the medical defendants concerning his hemorrhoid

9

condition, which he has not, there is nothing in his complaint which establishes that prison officials and segregation officers personally participated in or had any direct involvement with the plaintiff's medical treatment.

"[S]upervisory officials are entitled to rely on medical judgments by medical professionals responsible for prisoner care." *Williams v. Limestone County, Ala.*, 198 Fed. App'x 893, 897 (11th Cir. 2006). Courts have recognized prison officials are not under a duty to directly supervise medical personnel or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional deprivation. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004) (in the absence of a reason to believe, or actual knowledge, that medical staff is administering inadequate medical care, non-medical prison personnel are not chargeable with the Eighth Amendment scienter requirement of deliberate indifference); *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996) ("A prisoner may not attribute any of his constitutional claims to higher officials by the doctrine of *respondeat superior*; the official must actually have participated in the constitutional wrongdoing." (internal quotation marks and citation omitted)); *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment).

Because prison medical staff treated the plaintiff for his hemorrhoid condition and defendants Rathman, Clay, Captain Davis, Lieutenant Davis, Orr, Bounds, Allor, Nelson, Stuart, and Daughtery had no personal involvement in the plaintiff's medical care according to the plaintiff's amended complaint, the plaintiff's Eighth Amendment medical care claims against these individuals under *Bivens* are due to be dismissed for failing to state a claim upon which relief may be granted.

    2.  <u>Plaintiff's Dental Care</u>

On January 26, 2012, the plaintiff experienced dental pain due to a cavity. (Doc. 40 at 2). The plaintiff alleges he submitted an inmate request form to Dr. Burrell concerning the cavity, but Burrell did not examine or treat the plaintiff for his dental pain. (*Id*.).

The Eleventh Circuit has recognized that "[i]n certain circumstances, the need for dental care combined with the effects of not receiving it may give rise to a sufficiently serious medical need to show objectively a substantial risk of serious harm." *Farrow*, 320 F.3d 1235, 1243-44. (11th Cir. 2003). In *Farrow,* the Eleventh Circuit found that the plaintiff, a state prisoner, established a serious dental need based on evidence demonstrating "pain, continual bleeding and swollen gums, two remaining teeth slicing into gums, weight loss, and [ ] continuing medical problems" that persisted for over a year. *Id.* at 1244-45.

Here, the plaintiff alleges only dental pain due to a cavity. (Doc. 40 at 2). The plaintiff does not allege that he experienced swollen gums, bleeding, an inability to chew his food, or any other medical condition due to his cavity. Therefore, the plaintiff's dental cavity does not rise to the level of an objectively serious medical need. *See Clary v. Hastings*, No. 12-044, 2012 WL 1802455, *3 (M.D. Ga. Apr. 25, 2012) *report and recommendation adopted*, 2012 WL 1802470 (M.D. Ga. May 17, 2012) (dismissing deliberate indifference claim under 28 U.S.C. § 1915 for denial of dental care because three chipped teeth did not constitute objectively serious medical need); *Johnson v. Smith*, No. 10-236, 2011 WL 344085, *3 (N.D. Ga. Feb. 1, 2011) (plaintiff failed to state a claim for deliberate indifference against prison officials for refusal to extract painful tooth); *Ealy v. Geo Grp., Inc.*, No. 12-0205, 2014 WL 4437636, *21 (N.D. Fla. Sept. 5, 2014) (plaintiff failed to state a claim for deliberate indifference based on prison officials' refusal to treat injury to teeth).

Because the plaintiff fails to allege that defendant Burrell was deliberately indifferent to his serious medical need, the plaintiff's Eighth Amendment medical claim against defendant Burrell under *Bivens* is due to be dismissed for failing to state a claim upon which relief may be granted.

3. Plaintiff's Eye Condition

The plaintiff alleges that he was delayed necessary corrective eye surgery for years which has impaired his vision. (Doc. 40 at 4). However, the plaintiff does not associate any of the named individual defendants with delaying his eye surgery. Vague, general, or conclusory allegations are insufficient to merit relief under 42 U.S.C. § 1983, much less a complete lack of any allegation. *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Even under the so-called notice rules of pleading, the complaint must state a cause of action sufficient to affirmatively show the plaintiff is entitled to relief, since "[i]t is not enough, to indicate merely that the plaintiff has a grievance but sufficient detail must be given so that the defendant, and the Court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal basis for recovery." *Id*. at 556 (citations omitted). Because the plaintiff fails to state factual allegations against any of the individual defendants concerning his eye care, his Eighth Amendment claims under *Bivens* concerning the same are due to be dismissed.[5]

**B. FTCA Claims**

The plaintiff's FTCA negligence and/or medical malpractice claims against the United States of America based on the medical care he received at FCI Talladega for his hemorrhoids, dental pain, and eye care are due to proceed at this juncture. The plaintiff has alleged sufficient facts to warrant a response from this defendant.

---

[5] The plaintiff also alleged in his original complaint that the defendants denied him medical care and transferred him from FCI Talladega in retaliation for fasting to protest conditions at the prison and for requesting to speak to a prison representative from Washington, D.C. (Doc. 1 at 6, 24). However, the plaintiff did not raise this claim in his final amended complaint. (Doc. 40). Therefore, it will not be considered here.

## IV.   Recommendation

Accordingly, for the reasons stated above, the undersigned **RECOMMENDS** the following claims be **DISMISSED WITHOUT PREJUDICE** for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A (b)(1):

(1) The plaintiff's Eighth Amendment medical claims under *Bivens* against defendants Holbrook, Hernani, Paco, Dela Cruz, Marasigan, Hardy, Nurse Jane Doe, and John Doe Medical Services concerning the plaintiff's hemorrhoid condition;

(2) The plaintiff's Eighth Amendment medical claims under *Bivens* against defendants Rathman, Clay, Captain Davis, Lieutenant Davis, Orr, Bounds, Allor, Nelson, Stuart, and Daughtery concerning the plaintiff's hemorrhoid condition;

(3) The plaintiff's Eighth Amendment medical claims under *Bivens* against defendant Burrell concerning the plaintiff's dental care; and

(4) The plaintiff's Eighth Amendment medical claims under *Bivens* concerning the plaintiff's eye care.

The undersigned **FURTHER RECOMMENDS** that the following claims be **REFERRED** to the magistrate judge for further proceedings:

(1) The plaintiff's FTCA claims against the United States of America concerning the plaintiff's medical treatment for his hemorrhoids, and his dental and eye care.

## V.   Notice of Right to Object

The plaintiff may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the clerk. **Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.**   Failure to do so will bar any later challenge or review of the factual findings of the magistrate judge, except for plain error.   See 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474

13

U.S. 140, (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).

To challenge the findings of the magistrate judge, the plaintiff must file with the clerk of the court written objections which specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. Any objections to the failure of the magistrate judge to address any contention raised in the complaint also must be included. Objections not meeting the specificity requirement set out above will not be considered by a district judge. The filing of objections is not a proper vehicle to make new allegations or present additional evidence. Furthermore, it is not necessary for the plaintiff to repeat legal arguments in objections.

The plaintiff may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

**DONE** this 2nd day of November, 2015.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE